UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stephen Collins,

    Petitioner,

v.

U.S.A.,

    Respondent.

Case No. 21-cv-429 (WMW/DTS)

**AMENDED
REPORT AND RECOMMENDATION**

Petitioner Stephen Collins is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota (FCI-Sandstone), where he began serving a 120-month term of imprisonment in 2018 for possessing more than fifty thousand images and nearly one thousand videos of child pornography.[1] After a federal court in Alabama denied his request for compassionate release[2] and the Bureau of Prisons denied him transfer to home confinement under the CARES Act,[3] he now asks this Court to invoke "an extraordinary remedy"[4] and order his release through a writ of habeas corpus. Pet. at 1, Dkt. No. 1. Collins's petition challenges the conditions of his confinement—a claim not cognizable under habeas. Thus, the Court lacks jurisdiction to entertain his claims on a petition for a writ of habeas corpus and his petition must be dismissed.

---

[1] Gov't Resp. at 1, Dkt. No. 17; Order at 2, United States v. Collins, No. 1:11-cr-235 (Dkt. No. 86) (S.D. Ala. Sept. 14, 2020).
[2] Order at 1, 12, United States v. Collins, No. 11-cr-235 (Dkt. No. 86) (S.D. Ala. Sept. 14, 2020).
[3] Gov't Resp. at 9, Dkt. No. 17.
[4] Ex parte Simon, 208 U.S. 144, 148 (1908).

**FINDINGS OF FACT**

**I. COVID-19[5]**

COVID-19 is an infectious disease caused by the SARS-CoV-2 virus, a novel coronavirus strain. Its global spread has caused the ongoing pandemic and the following number of infections or deaths:[6]

|  | Infections | Deaths | Case Fatality Ratio |
|---|---|---|---|
| **Globally** | 194,321,091 | 4,162,524 | 2.14% |
| **United States** | 34,446,383 | 610,967 | 1.77% |
| **Minnesota** | 609,387 | 7,743 | 1.27% |
| **Pine County** | 3,373 | 23 | 0.68% |
| **FCI-Sandstone** | 678 (Total)<br>53 (Staff)<br>625 (Inmates) | 1 (Total)<br>0 (Staff)<br>1 (Inmates) | 0.15% (Total)<br>0% (Staff)<br>0.16% (Inmates) |

COVID-19 is a respiratory disease with variable health effects ranging from those who are asymptomatic to death.[7] Its primary mode of transmission is through respiratory droplets, meaning that it passes between persons in close contact through—for example—coughing, sneezing, or talking.[8] It is also possible that SARS-CoV-2 spreads

---

[5] Because SARS-CoV-2 is a novel virus, public health and medical research about COVID-19 is rapidly changing. Some of the information Collins presents in his Petition has since become outdated. Thus, the Court takes judicial notice of current COVID-19 data and this section reflects current public health information and recommendations. *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016) (recognizing authority to take judicial notice of government websites); *e.g.*, *In re RFC and ResCap Liquidating Tr. Action*, 444 F. Supp. 3d 967, 969 & n.1 (D. Minn. 2020) (taking judicial notice of COVID-19 data from CDC).

[6] Johns Hopkins University, *Coronavirus Resource Center* (Jul. 26, 2021), https://coronavirus.jhu.edu/map.html; Federal Bureau of Prisons, *COVID-19 Facility Data* (Jul. 26, 2021), http://www.bop.gov/coronavirus.

[7] Ctrs. for Disease Control and Prevention, *Fact Sheet for Healthcare Providers* (Dec. 1, 2020).

[8] Ctrs. for Disease Control and Prevention, *Science Brief: SARS-CoV-2 Transmission* (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html.

through contact, such as touching a surface contaminated by virions, though this mode is less prevalent and the relative risk is much lower.[9]

Vaccination is a critical prevention measure to combating the pandemic.[10] For those who are unvaccinated or who are at a higher risk for contracting the virus, the Centers for Disease Control and Prevention (CDC) advises three ways to slow the spread of COVID-19: wear a mask, stay at least six feet apart from others, and avoid crowds.[11] The CDC also advises practicing basic hygiene, such as frequent handwashing, covering coughs and sneezes, and cleaning often-touched surfaces.[12]

Certain populations are at increased risk for developing severe complications from COVID-19; these groups include older adults and individuals with certain medical conditions.[13] Diabetes is among the medical conditions correlated with an increased risk for severe COVID-19 symptoms. Other conditions, like hypertension and liver disease, may increase risk for severe illness but there is not currently enough data to establish a link.[14]

---

[9] Ctrs. for Disease Control and Prevention, *Science Brief: SARS-CoV-2 and Surface (Fomite) Transmission for Indoor Community Environments* (Apr. 5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/surface-transmission.html.

[10] Ctrs. for Disease Control and Prevention, *Science Brief: COVID-19 Vaccines and Vaccination* (May 27, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

[11] Ctrs. for Disease Control and Prevention, *How to Protect Yourself & Others* (July 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

[12] *Id.*

[13] Ctrs. for Disease Control and Prevention, *Science Brief: Evidence Used to Update the List of Underlying Medical Conditions that Increase a Person's Risk of Severe Illness from COVID-19* (May 12, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/underlying-evidence-table.html.

[14] *Id.*

Though rare, COVID-19 reinfection can occur, meaning an individual gets infected once, recovers, then later becomes infected again.[15] The CDC advises that studies are still ongoing to determine reinfection prevalence and severity.[16] Preliminary studies suggest that the reinfection rate is less than one percent,[17] though the emergence of different genetic viral strains make a definitive answer unclear.[18]

The CDC recognizes that incarcerated persons are a vulnerable population at increased risk for COVID-19 and offers guidance tailored to correctional and detention facilities.[19] Much of this guidance recommends implementing CDC's individual hygiene recommendations or modifying facility policies or procedures to encourage social distancing, increase sanitation, and limit disease transmission.[20] That said, the BOP has administered more than two hundred thousand doses of the COVID-19 vaccine.[21]

---

[15] Ctrs. for Disease Control and Prevention, *Reinfection with COVID-19* (Oct. 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html.

[16] *Id.*

[17] Adnan I. Qureshi et al., *Reinfection with Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) in Patients Undergoing Serial Laboratory Testing*, 2021 CLINICAL INFECTIOUS DISEASE 1, 2 ("Reinfection was identified in 0.7% (n = 63, 95% CI: .5%–.9%) of the patients.").

[18] Jingzhou Wang et al., *COVID-19 Reinfection: A Rapid Systemic Review of Case Reports and Case Series*, 69 J. INVESTIG. MED. 1253 (2021).

[19] Ctrs. for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Jun. 9, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

[20] *Id.*

[21] Federal Bureau of Prisons, *COVID-19 Vaccine Implementation*, http://www.bop.gov/coronavirus (last accessed July 26, 2021); Ctrs. for Disease Control and Prevention, *COVID-19 Vaccinations in the United States*, https://covid.cdc.gov/covid-data-tracker/#vaccinations (last accessed July 26, 2021).

## II. Collins's Background

Collins is incarcerated at FCI-Sandstone. He is "in his 60s" and claims to suffer from various medical conditions which the CDC recognizes as comorbidities for COVID-19, such as diabetes and "some more serious heart conditions." Pet. at 1, 3, Dkt. No. 1. Collins attached several medical records to his petition as evidence of his alleged health conditions. These records show that, in September 2020, blood chemistry revealed that his hemoglobin A1C and glucose were elevated—both of which correlate to his diabetes. Pet. Ex. 1 at 2–3, Dkt. No. 1-1. Those laboratory results also showed elevated alanine aminotransferase (ALT)[22] and C-reactive protein[23] levels, for which the significance is unclear. *Id.* at 3. Other laboratory results from November 2020 showed his triglycerides were elevated, his high-density lipoprotein (HDL) cholesterol ("good cholesterol") was low, and his cholesterol to HDL ratio was high. *Id.* at 1. The Court understands these laboratory results are submitted to support Collins's claim that he has "more serious heart conditions." Collins also included medication information sheets for aspirin, lisinopril, and atorvastatin, which are medications used to treat patients with cardiac issues. *Id.* at 4–6.

Despite Collins's claims about the great risks he faces from COVID-19, he has already contracted and fully recovered from it. Gov't Resp. at 9, Dkt. No. 17. He has also received two doses of Moderna's COVID-19 vaccine. *Id.*

---

[22] ALT is an enzyme concentrated mostly in the liver. Its elevation suggest damage to liver cells though an elevated ALT is not by itself diagnostic. Collins nowhere suggests that he suffers from any type of hepatopathy.
[23] CRP is an inflammatory marker, which can suggest chronic inflammatory disease. It has also been linked to an increased risk of myocardial infarctions. It is unclear how, and Collins does not explain why, this elevated level matters to his medical history.

5

Before filing this petition, Collins has sought release through other means. In June 2020, he moved for compassionate release in the Southern District of Alabama, where he was convicted and sentenced. Def.'s Mot. at 1, *United States v. Collins*, No. 1:11-cr-235 (Dkt. No. 77) (S.D. Ala. June 1, 2020). That court denied his request in September 2020. Order at 1, 6, *United States v. Collins*, No. 1:11-cr-235 (Dkt. No. 86) (S.D. Ala. Sept. 14, 2020). In July 2020 Collins tried to file with the BOP an administrative remedy requesting compassionate release and a reduction in his sentence because of COVID-19. Gov't Resp. at 10–11, Dkt. No. 17. He failed to follow instructions, however, in filing that request. *Id.* The BOP also considered Collins for transfer to home confinement under the CARES Act. Because his criminal history as a sex offender made him ineligible for home confinement, the BOP denied him transfer. *Id.* at 9. Collins has not filed an administrative remedy challenging that denial or requesting a transfer to home confinement under the CARES Act. *Id.* at 11.

Collins asks this Court to release him to his son's house in Coden, Alabama, where he "can properly quarantine." Pet. at 1. Collins's risk to COVID-19 in Coden, Alabama is greater than in FCI-Sandstone or Minnesota:[24]

|  | Infections | Deaths | Case Fatality Ratio |
|---|---|---|---|
| **Alabama** | 570,667 | 11,483 | 2.01% |
| **Mobile County** | 45,819 | 855 | 1.87% |

### III. Collins's Suit

Collins alleges that the conditions of confinement at FCI-Sandstone, namely its alleged inability to protect him from COVID-19, violates the Fifth and Eighth Amendments

---

[24] Johns Hopkins University, *Coronavirus Resource Center* (Jul. 26, 2021), https://coronavirus.jhu.edu/map.html.

to the United States Constitution. Pet. at 5–8, Dkt. No 1. His claims stem from his assignment to a nine- by twelve-foot "double bunk cube with a bunkmate," which "make[s] observing the CDC requirement of social distancing impossible." *Id.* at 2. He also alleges that facility staff cannot prevent the " 'wide spread transmission' of Covid-19," which has caused "[h]undreds of Inmates [to become] infected and the disease is rampaging through the units." *Id.*

Collins argues the conditions at FCI-Sandstone are cruel and unusual—that his incarceration coupled with his underlying health conditions puts him "at high risk of death from COVID-19." *Id.* at 5. That risk, he alleges, is "so severe that it constitutes an irreparable harm." *Id.*

Collins also argues that the Due Process Clause of the Fifth Amendment includes a right to guaranteed safety. *Id.* at 1, 6. He believes that FCI-Sandstone's response has been woefully inadequate for three reasons First, his medical conditions put him at greater risk and he has not been put in special housing. *Id.* at 6. Second, FCI-Sandstone has—allegedly—implemented "no policies specifically aimed at protecting individuals with high risk medical conditions." *Id.* Finally, he must share a cell with another individual, an allegedly "obvious and serious danger." *Id.*

## CONCLUSIONS OF LAW

For over a year, COVID-19 has posed a global threat to health and safety, including to those residing in congregate living facilities, such as correctional institutions or long-term care facilities. Recognizing the threat linked to congregate living, and tracking CDC guidance to social distance, many state and federal agencies implemented policies to reduce intrafacility population density, maximize social distancing and segregation, and

7

obstruct the transmission of SARS-CoV-2. Still, many incarcerated persons believe those COVID-19-related policy changes are inadequate and choose to bring legal challenges.[25] Courts have struggled to resolve whether habeas corpus or civil rights actions are the proper mechanism to litigate claims that "confinement itself is the unconstitutional 'condition of confinement'[.]" *Essien v. Barr*, 457 F. Supp. 3d 1008, 1013 (D. Colo. 2020).

Claims alleging prison conditions are unconstitutional are properly litigated as civil rights actions under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Farmer v. Brennan*, 511 U.S. 825, 845–46 (1994). In that posture, courts can 'right the wrong' by awarding damages or issuing injunctions to prohibit future unconstitutional conduct. Habeas corpus, by contrast, is a "procedural device for subjecting executive, judicial, or private restraints on liberty to judicial scrutiny. Where it is available, it assures among other things that a prisoner may require his jailer to justify the detention under the law." *Peyton v. Rowe*, 391 U.S. 54, 58 (1968). When the fact or duration of confinement is unconstitutional, courts can order "'immediate or speedier release' from confinement." *Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)).

There are two fundamental distinctions between civil rights actions and habeas corpus petitions. First, civil rights actions challenge the constitutionality of some condition of confinement or method of executing a custodial sentence, while habeas petitions dispute the constitutionality of the fact or duration of the sentence itself. Second, civil

---

[25] Burton Bentley II, *The Growing Litigation Battle Over COVID-19 in the Nation's Prisons and Jails*, Law.com, Aug. 25, 2020, https://www.law.com/2020/08/25/the-growing-litigation-battle-over-covid-19-in-the-nations-prisons-and-jails/?slreturn=20210103173511.

rights actions—generally—do not terminate confinement but compensate for or alleviate the unconstitutional condition. Habeas corpus provides a mechanism to end the allegedly unconstitutional restraint on liberty in its entirety.

Because much of the COVID-19 litigation is legally and factually analogous to different aspects of both civil rights and habeas corpus litigation, courts have not uniformly determined which action is proper, which has led to conflicting judicial guidance and reasoning. *Compare Toure v. Hott*, 458 F. Supp. 3d 387, 400 (E.D. Va. 2020) (finding habeas improper and detailing "reasons to believe the Fourth Circuit would . . . hold § 2241 [a]s an inappropriate means to challenge one's conditions of confinement"), *with Wilson v. Williams*, 455 F. Supp. 3d 467, 475 (N.D. Ohio 2020) ("Whereas many medical needs claims might appropriately be addressed through § 1983 litigation, claims concerning COVID-19 are not so easily classified as § 1983 claims."), *vacated on other grounds* 961 F.3d 829 (6th Cir. 2020), *and Money v. Pritzker*, 453 F. Supp. 3d 1103, 1119 (N.D. Ill. 2020) (recognizing "the unique context in which litigation over COVID-19 arises . . . because the sudden threat to mortality from the spread of virus in a congregate setting may affect the fact or duration of confinement").

This District, however, has found that incarcerated persons' conditions of confinement claims stemming from COVID-19 must be litigated as civil rights actions, not through habeas corpus. *Jorgensen v. Birkholz*, No. 20-cv-2349, 2021 WL 2935641 (D. Minn. July 13, 2021); *Malcolm v. Starr*, No. 20-cv-2503, 2021 WL 931213 (D. Minn. Mar. 11, 2021).

9

**I. Habeas Corpus**

    **A. Legal Standard**

The writ of habeas corpus is a mechanism to hold the government accountable for resisting unjustified or unlawful detention. *Ex parte McCardle*, 73 U.S. (6 Wall.) 318, 325–26 (1867). Habeas corpus is the exclusive means to assess claims that "go[] directly to the constitutionality of [a prisoner's] physical confinement itself"; allowing them to "seek[] either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see* 42 U.S.C. § 2241(c)(3).

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Thus, for a federal court to have subject matter jurisdiction over a petition for the writ of habeas corpus, the petitioner must be "in custody," and second, that custody itself must violate "the Constitution or laws or treaties of the United States." *Id.*; *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

But "[i]f the prisoner is not challenging the validity of his conviction or the length of his detention, . . . then a writ of habeas corpus is not the proper remedy." *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam); *see Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (identifying two types of claims properly pursued through habeas: "[c]hallenges to the validity of any confinement or to particulars affecting its duration"). Instead, claims challenging conditions of confinement are proper as civil rights claims under 42 U.S.C. § 1983 or as a *Bivens* action. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).

### B. Challenges to Conditions of Confinement

Conditions of confinement claims are not cognizable under habeas corpus. "Where [a] petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his . . . custody, the district court lacks the power or subject matter jurisdiction to issue a writ." *Kruger*, 77 F.3d at 1073; *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014). Constitutional challenges to conditions of confinement claims must be litigated as civil rights actions. *Muhammad*, 540 U.S. at 750 ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . .; requests for relief turning on circumstances of confinement may be presented in a civil rights action."); *Nelson*, 541 U.S. at 643 ("[C]onstitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside th[e] core [of habeas corpus] and may be brought pursuant to § 1983 in the first instance.").

### C. District Precedent

District precedent establishes that incarcerated persons must litigate their COVID-19-related conditions of confinement claims as a civil rights action. In *Jorgensen v. Birkholtz*, No. 20-cv-2349, 2021 WL 2935641, at *1 (D. Minn. July 13, 2021), the petitioners were two individuals incarcerated at FPC-Duluth. They alleged the conditions there, coupled with their age and underlying medical complications, created such unconstitutional conditions of confinement that release was the only proper remedy and sought transfer to home confinement through a writ of habeas corpus. After a thorough review, this Court found that even though the petitioners sought release—a remedy traditionally associated with habeas corpus—Eighth Circuit precedent precluded litigating

11

conditions of confinement claims under habeas corpus. Thus, the Court found that it lacked jurisdiction to consider the petition and dismissed it. *Id.* at *2.

Similarly, in *Malcolm v. Starr*, No. 20-cv-2503, 2021 WL 931213 (D. Minn. Mar. 11, 2021), the Court found that the petitioners' request for habeas corpus relief was inappropriate. There, the petitioners were a class of incarcerated persons at FCI-Waseca seeking transfer to home confinement. They too alleged that COVID-19 caused unsafe and unconstitutional conditions at the facility where they were incarcerated. The Court, however, found that it lacked jurisdiction over their habeas corpus petition because they challenged their conditions of confinement, not their sentence of incarceration. *Id.* at *4–6.

### D. Analysis

Habeas corpus is not the proper means to address Collins's grievances. He does not challenge the validity of his confinement but seeks an order modifying his level of custody because of the conditions of his confinement. Nor does Collins allege that his detention at FCI-Sandstone is, or in home confinement would be, improper. Instead, it is the purportedly unconstitutional *conditions of confinement* specifically at FCI-Sandstone, which Collins argues justifies his transfer. As other federal district courts have recognized, but for conditions arising from COVID-19, Collins's claims would not exist. *E.g.*, *Alvarez v. Larose*, 445 F. Supp. 3d 861, 866 (S.D. Cal. 2020); *Wragg v. Ortiz*, 462 F. Supp. 3d 476, 484 (D.N.J. 2020). Because Collins raises no challenge to the validity of his sentence—whether served in FCI-Sandstone, home confinement, or elsewhere—and his claims stem from the conditions of his confinement at FCI-Sandstone, habeas corpus is improper. Collins's entire petition alleges that FCI-Sandstone has created

unconstitutional conditions by failing to implement certain safeguards against COVID-19 and protect him from the pandemic—the heart of his claim challenges not his incarceration but the conditions in which he is incarcerated.

Collins has also not alleged that his transfer to home confinement is the only means to reduce his risks; it is merely his preferred outcome. If the conditions at FCI-Sandstone are unconstitutional, the facility could reduce Collins's risk by releasing *other* inmates to home confinement or implementing other COVID-19 precautions. Thus, while Collins's ideal remedy is his transfer to home confinement, *his* transfer is not the only remedy available to cure any alleged-constitutional injury.

Thus, the Court lacks subject matter jurisdiction to consider Collins's Section 2241 claim for allegedly unconstitutional conditions of confinement at FCI-Sandstone and his petition must be dismissed. *Spencer*, 774 F.3d at 471. He must, however, have a chance to "convert[] [his] claims from a habeas proceeding to a [civil rights] action." *Id.*

### E. Proper Posture as a Civil Rights Action

Though the Court finds it lacks subject matter jurisdiction to consider Collins's habeas corpus petition, jurisdiction would be proper in a civil rights action. In determining the current posture of Collins's litigation is improper, the Court must ensure that he has some proper mechanism available to pursue his constitutional claims. *See Brown v. Nutsch*, 619 F.2d 758, 763–64 (8th Cir. 1980); *cf. Taylor v. Riojas*, 141 S. Ct. 52 (2020).

Much of the precedent discussed above describes conditions-of-confinement-claims improperly brought under habeas corpus as proper claims under 42 U.S.C. § 1983 or under *Bivens*. Collins's suit, however, cannot proceed under either of those causes of action: Section 1983 claims are cognizable against only a state entity. 42 U.S.C. § 1983

13

(requiring action under color of state law). *Bivens* actions permit individual capacity suits for damages against federal officers for a narrow class of constitutional violations. *Bivens*, 403 U.S. at 389 (holding that the Constitution creates a cause of action for money damages). Collins is neither suing state officers nor seeking money damages, so neither Section 1983 nor *Bivens* are proper actions.

However, "federal district courts . . . [do] have jurisdiction over claims by federal prisoners against federal prison officials seeking vindication of their constitutional rights under either 28 U.S.C. § 1331 or 28 U.S.C. § 1361, and may obtain relief in the nature of either injunction or mandamus." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1236 (10th Cir. 2005). Section 3626 of Title 18 likewise permits prisoners to seek prospective injunctive relief for claims of unconstitutional conditions of confinement. 18 U.S.C. § 3626. Though § 3626 operates primarily as a limitation on the relief federal courts can provide, it implicitly authorizes federal prisoners to seek the relief Collins seeks here. 18 U.S.C. § 3626(a)(1).

Thus, whether Collins's cause of action arises from the "inherent authority to issue injunctive relief that emanates from § 1331" or some other statute, such as § 3626, he may bring his constitutional claims seeking prospective injunctive relief as a civil action. *Taylor v. Rice*, No. 10-4746, 2012 WL 246014, at *8 (D. Minn. Jan. 6, 2012); *Jorgensen*, 2021 WL 2935641, at *3.

## CONCLUSION

Because Collins's challenge to the conditions of his confinement is improper on a petition for a writ of habeas corpus, the Court lacks jurisdiction to consider it. His petition must be dismissed. The Eighth Circuit's guidance in *Spencer*, however, directed courts

14

to construe filings liberally and provide petitioners with the option to have the court consider their Petition as a complaint. *Spencer*, 774 F.3d at 471. Collins may file a civil rights complaint or file a request that this Court construe his petition as a civil rights claim.

## RECOMMENDATION

For these reasons, IT IS HEREBY RECOMMENDED:

1. Petitioner Stephen Collins's Petition for a writ of habeas corpus under 28 U.S.C. § 2241 [Dkt. No. 1] be **DISMISSED**.

2. Petitioner Stephen Collins's Motion for Summary Judgment [Dkt Nos. 21 & 40] be **DENIED AS MOOT**.

3. The entry of judgment be stayed for 60 days to allow Collins to file a civil rights complaint or file a request that the Court construe his petition in that posture.

Dated: July 30, 2021                               s/David T. Schultz
                                                   DAVID T. SCHULTZ
                                                   United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to the magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).